IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **JERRY GLASCO-PARISH,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-21-1009-AMG |
| | ) |
| **KILOLO KIJAKAZI, Acting** | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Jerry Glasco-Parish ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34.  (Doc. 1).  The Commissioner answered the Complaint and filed the Administrative Record ("AR") (Docs. 11, 12), and the parties have fully briefed the issues. (Docs. 14, 21).[1]  The parties have consented to proceed before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1).  (Docs. 16, 17).  Based on the Court's review of the record and issues presented, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings.

---

[1] Citations to the parties' briefs refer to the Court's CM/ECF pagination.  Citations to the Administrative Record refer to its original pagination.

I.       **The Disability Standard and Standard of Review**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence" from an "acceptable medical source," such as a licensed physician or a licensed and certified psychologist; whereas the claimant's own "statement of symptoms, a diagnosis, or a medical opinion" is not sufficient to establish the existence of an impairment. 20 C.F.R. § 404.1521; *see id.* §§ 404.1502(a), 404.1513(a). A plaintiff is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden-shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is engaged in any substantial gainful activity; (2) whether the claimant suffers from a severe impairment

or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"),[2] whether the impairment prevents the claimant from continuing claimant's past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy.  20 C.F.R. § 404.1520(a)(4)(i)-(v).  Plaintiff bears the "burden of establishing a prima facie case of disability under steps one, two, and four" of the SSA's five-step procedure.  *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).  If the plaintiff makes this prima facie showing, "the burden shifts to the Commissioner to show the claimant has the [RFC] to perform other work in the national economy in view of [claimant's] age, education, and work experience."  *Id*.  "The claimant is entitled to disability benefits only if [he or she] is not able to perform other work."  *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

This Court's review of the Commissioner's final decision is limited "to determin[ing] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence."  *Noreja v. Comm'r, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted).  Substantial evidence is "more than a scintilla, but less than a preponderance."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  "It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S.Ct.

---

[2] RFC is "the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

1148, 1154 (2019) (internal quotation marks and citation omitted). A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Procedural History

Plaintiff filed an application for DIB on January 13, 2020, alleging a disability onset date of December 24, 2017. (AR, at 71, 105, 212). The SSA denied the application initially and on reconsideration. (*Id*. at 111-14, 116-21). Then an administrative hearing was held on March 24, 2021. (*Id*. at 26-49). Afterwards, the Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (*Id*. at 12-21). The Appeals Council subsequently denied Plaintiff's request for review. (*Id*. at 1-6). Thus, the ALJ's decision became the final decision of the Commissioner. *See Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009); 20 C.F.R. § 404.981.

**III.    The Administrative Decision**

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 24, 2017, the alleged onset date. (AR, at 14). At Step Two, the ALJ determined Plaintiff suffers from the severe impairments of anxiety, depression, post-traumatic stress disorder, symptomatic human immunodeficiency virus infection, essential hypertension, dysfunction of major joints, chronic venous insufficiency, and obesity. (*Id.*) At Step Three, the ALJ found Plaintiff's impairments do not meet or medically equal any of the listed impairments. (*Id.*) The ALJ then determined that Plaintiff had the RFC to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except [Plaintiff] can understand, remember, and carry out short and simple tasks and instructions, can respond and adjust to routine work changes, can maintain attention for two hour segments, and can make simple work-related decisions.

(*Id.* at 17). Then, at Step Four, the ALJ concluded that Plaintiff was unable to perform any of his past relevant work. (*Id.* at 19). At Step Five, however, the ALJ found when "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.* at 20). Thus, the ALJ found that Plaintiff had not been under a disability since December 24, 2017. (*Id.* at 21).

**IV.    Claim Presented for Judicial Review**

Plaintiff contends his healthcare providers' advice to elevate his legs amounts to a medical opinion for which the ALJ should have articulated its persuasive value. (Doc. 14, at 7-9). He also argues the ALJ did not include an appropriate narrative discussion regarding his edema and the alleged resultant limitations. (*Id.* at 6). In response, the

Commissioner argues the ALJ properly considered the evidence. (Doc. 21, at 4-7). The Court finds both points of error are meritorious.

## V. The ALJ Failed To Sufficiently Consider the Record Related to Plaintiff's Edema, Warranting Remand.

### A. Relevant Evidence

#### 1. Medical Record

On December 18, 2015, Plaintiff reported he had pain in his bilateral lower extremity that he rated as a five on a ten-point scale. (AR, at 617). Dr. Karen Kinney, M.D., noted Plaintiff had 1+ pitting edema bilaterally – which may be haven caused by amlodipine – and counseled Plaintiff to "elevat[e] legs when possible" and to consider using compression hose while at work. (*Id.* at 622-23). On August 26, 2016, Plaintiff reported no pain but noted he had worsening lower extremity edema over the past eight months. (*Id.* at 569, 575). Dr. Kinney noted Plaintiff had 1+ pedal edema bilaterally, and she discontinued Plaintiff's amlodipine in favor of metoprolol. (*Id.* at 574-75).

On February 20, 2017, Plaintiff reported pain in his legs bilaterally, rating at nine-out-of-ten in the morning and at six-out-of-ten the rest of the day. (*Id.* at 544). He described his pain as feeling "like his legs are on fire and cracking from [his] feet all the way up," but denied pitting, cracking, or skin discoloration. (*Id.* at 544, 548). Stephanie Marrs, APRN CNP, noted trace-to-1+ pedal edema and discussed using compression stockings to help with pain and edema during the work day. (*Id.* at 551, 553). She also "encouraged [Plaintiff] to elevate [his] legs above heart when at rest." (*Id.* at 553).

On July 13, 2018, Ms. Marrs noted Plaintiff had 2+ pedal edema – which she classified as "mild" – and had run out of his medicine for the condition. (*Id.* at 417-18). On December 12, 2018, Ms. Marrs noted trace pedal edema that was non-pitting. (*Id.* at 879, 881). But by January 15, 2019, Dr. Rishi Thakral – Plaintiff's orthopedic specialist – noted on physical examination that Plaintiff "ha[d] some significant edema to his bilateral legs for which he report[ed] he [was] going to a physician." (*Id.* at 863).

On March 20, 2019, Plaintiff rated his back and leg pain as an eight and noted his legs drain clear fluid at times. (*Id.* at 836-37). Ms. Marrs noted Plaintiff had 3+ pedal edema and venous stasis with redness and flaking skin and encouraged Plaintiff to follow up with his primary care physician for this condition. (*Id.* at 839-40). On July 11, 2019, Plaintiff again saw Ms. Marrs, who again noted Plaintiff's 3+ pedal edema and venous stasis. (*Id.* at 809).

At a March 26, 2020, telehealth visit with Dr. Kathryn Klump, M.D., Plaintiff reported "experiencing worse edema in both legs." (*Id.* at 1014). Plaintiff stated his edema was more frequent, his skin appeared shiny and leaked fluid, he slept with his legs elevated, and his swelling started each morning once he got out of bed. (*Id.*) Dr. Klump stated that Plaintiff was "able to create a persisting indentation in lower ext[tremity]" and had 2+ pitting edema bilaterally. (*Id.* at 1016). She instructed Plaintiff to wear compression wraps on both legs when home. (*Id.* at 1018). At a July 16, 2020, telemedicine encounter, Plaintiff reported to Ms. Marrs that his lower extremity edema had improved after starting Lasix. (*Id.* at 1045).

On September 3, 2020, Plaintiff reported swelling in his legs and feet that was not painful, but was sensitive to touch. (*Id.* at 1118). Plaintiff elevated his legs nightly which provided relief until he woke up in the morning, and he wore "compression as he is able." (*Id.*) Dr. Klump noted that Plaintiff was "able to create a[] persisting indentation in lower ext[remitiy] c/w 2+ pitting edema bilaterally." (*Id.* at 1122). She "advised elevation" and considered a referral to a vascular specialist. (*Id.* at 1123).

### 2. Hearing Testimony

Plaintiff's attorney brought Plaintiff's edema to the ALJ's attention in his opening statement, citing medical records. (*Id.* at 32-34) (citing *id.* at 839, 863, 1013, 1016, 1045, 1064). His attorney argued that "because of the swelling, [Plaintiff] would need to elevate and offload his feet to allow the swelling to die down." (*Id.* at 34). He asserted that Plaintiff's "level of symptomatology and need to alleviate the swelling would make even sedentary work inappropriate." (*Id.* at 35).

Plaintiff testified that despite using Lasix and using compression stockings, his legs were still swelling. (*Id.* at 37). He noted his left leg still leaked even when he wore the stocking and he had "constant hurt, constant pain, [and] constant swelling." (*Id.*) He asserted as soon as he got up, his legs would swell almost instantly. (*Id.*) Plaintiff testified that "the only thing that's ever really helped is if [he] lay[s] down and elevate[s] his legs up above [his] heart." (*Id.* at 38). When he laid down like that, he contended it still took two-to-five hours for the swelling to subside. (*Id.*)

The vocational expert ("VE") testified that an individual who needed to elevate his leg above waist level for a minimum of two hours every day would be unable to perform any type of competitive work. (*Id.* at 47).

**B.      Statements by Plaintiff's Medical Providers Regarding Elevation of His Legs Amounted to Medical Opinions, Which the ALJ Failed to Evaluate.**

An ALJ is required to evaluate every medical opinion of record. *See* 20 C.F.R. § 404.1520c(b) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record."). "A medical opinion is a statement from a medical source about what [a claimant] can still do despite [his or her] impairment(s)" and whether a claimant has a limitation or restriction in the ability to perform physical, mental, or other demands of work or to adapt to environmental conditions. *Id.* § 404.1513(a)(2). An ALJ considers medical opinions using five factors: (1) how much the opinion is supported by objective medical evidence and explanation; (2) the consistency of the opinion with evidence from other sources in the claim; (3) the medical source's relationship with the claimant; (4) the specialization of the medical source; and (5) other factors that tend to support or contradict a medical opinion. *Id.* § 404.1520c(a), (c)(1)-(5). The ALJ must articulate how persuasive he or she finds a medical opinion. *Id.* § 404.1520c(b). In doing so, the ALJ is required to explain how he or she "considered the supportability and consistency factors for a medical source's medical opinions." *Id.* § 404.1520c(b)(2). But, the ALJ is not required to explain how he or she considered the remaining factors. *Id.*

9

Plaintiff contends his providers' advice to elevate his legs amounts to a medical opinion for which the ALJ should have articulated its persuasive value. (Doc. 14, at 7-9). Plaintiff cites two records for this proposition. (*Id.* at 8) (citing AR, at 553, 1123). First, on February 20, 2017, Ms. Marrs "encouraged [Plaintiff] to elevate [his] legs above heart when at rest" and "discussed compression stockings to help with pain and edema during the work day." (AR, at 553). Second, on September 3, 2020, Dr. Klump "advised elevation" of Plaintiff's legs due to a "recent exacerbation" of lower extremity edema. (*Id.* at 1123). The ALJ did not address either record, so if they are "medical opinions," the ALJ erred by not articulating their persuasive value. The Court finds the statements amount to medical opinions; thus, the ALJ erred.

The statements from Plaintiff's medical providers encouraging or advising him to elevate his legs amount to a restriction on Plaintiff's ability to perform the physical demands of work activities. This is evident because the VE testified that an individual who would need to elevate his legs above waist level for as little as two hours to address pain and swelling could not engage in competitive employment. (*Id.* at 47).

The Court finds support for this proposition from a case decided by this Court. In *Caudillo v. Colvin*, the record reflected the claimant's physician made a "repeated instruction that [s]he elevate her lower extremities." Case No. CIV-15-761-M, 2016 WL 4531150, at *6 (W.D. Okla. Aug. 9, 2016), *adopted*, 2016 WL 4532338 (W.D. Okla. Aug. 29, 2016). Despite the fact that the physician only "advised" the claimant to elevate her legs and did not specify the frequency with which she needed to do so, the Court found the physician's instruction "support[ed] a functional limitation." *Id.* Another court similarly

found a statement from a physician "indicat[ing] that [the claimant] should elevate her leg when at rest" should have been considered as a medical opinion. *Francis v. Berryhill*, 2019 WL 1376709, at *3 (M.D. Fla. Mar. 27, 2019).

The Commissioner argues that the "treatment providers simply recommended Plaintiff elevate his legs when he wasn't at work" and thus the recommendation was not a medical opinion. (Doc. 21, at 6). This point is *arguably* true about Ms. Marrs' statement, as she recommended Plaintiff elevate his legs "when at rest" and separately addressed the use of compression stockings "during the work day." (*Id.* at 553). Dr. Klump's opinion "advis[ing] elevation" made no such distinction, so the Commissioner's argument is not persuasive.[3]

On remand, the ALJ should weigh the treating providers' opinions regarding Plaintiff's need to elevate his legs.

### C. The ALJ Erred by Failing to Discuss Evidence Related to Plaintiff's Edema and Associated Alleged Symptoms.

Plaintiff contends "the ALJ did not discuss the medical evidence of [his] lower extremity edema and treatment or acknowledge his reported need to elevate his legs."

---

[3] Other courts have found the Commissioner's argument persuasive. *See, e.g., Patterson v. Kijakazi*, 2022 WL 103884, at *9 (M.D.N.C. Jan. 10, 2022) (finding "a <u>recommendation</u> that a patient undertake certain ameliorative measures does not equate to a physical <u>restriction</u> or a judgment about what Plaintiff can still do despite her impairments" and collecting cases), *adopted*, 2022 WL 904467 (M.D.N.C. Feb. 24, 2022). But as noted above, this Court finds Ms. Marrs' and Dr. Klump's statements are medical opinions based on the regulatory language and persuasive case law from this district. Even if the Commissioner were correct that these statements were not medical opinions, reversal would be required because the ALJ did not discuss the other related evidence as outlined below.

(Doc. 14, at 6). By failing to do so, Plaintiff asserts the ALJ did not include an appropriate narrative discussion. (*Id*.) The Court agrees.

Although the "ALJ is not required to discuss every piece of evidence," he "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Further, "it is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004).

As noted above, the medical record reflects Plaintiff had edema throughout the relevant period. Plaintiff reported to his medical providers that he was in pain and leaking fluid from his legs. (AR, at 544, 617, 836-37, 1014). Medical providers instructed Plaintiff to elevate his legs and wear compression stockings to lessen his swelling. (*Id.* at 551, 553, 622-23, 1018, 1123). Further, his medical providers changed his medications in an effort to control the condition. (*Id.* at 574-75, 1045). Despite these efforts and following his providers' instructions, Plaintiff routinely reported his continued edema and related symptoms to his medical providers. (AR, at 1014, 1118). Plaintiff testified that he has constant pain and swelling in his left leg when he is standing and that the swelling only subsides after two-to-five hours of elevating his legs above heart level. (*Id.* at 37-38). His attorney also highlighted the issue and cited pages of the medical record. (*Id.* at 32-34).

Despite the evidence in the record and Plaintiff's attorney bringing the issue to the ALJ's attention, the ALJ did not reference Plaintiff's alleged symptoms or summarize any medical records addressing Plaintiff's edema or swelling in his legs. Instead, the ALJ

wrote that Plaintiff "largely presented as medically normal" in 2017 and had "normal examinations physically" in 2018. (*Id.* at 18). He wrote that Plaintiff needed "relatively little physical check-ins for his medical impairments" in 2019, without reference to Plaintiff's edema. (*Id.*) The ALJ primarily focused on Plaintiff's mental impairments when summarizing Plaintiff's 2020 and 2021 medical treatment, but also addressed Plaintiff's hip. (*Id.* at 19).

Medical records reflecting Plaintiff's edema treatment and his alleged symptoms resulting from the condition are the type of probative evidence the ALJ should have addressed. If the ALJ "had credited this evidence, he might have assessed [Plaintiff's] functional abilities differently . . . [and] might have concluded that [Plaintiff's] RFC should include a restriction that [he] be permitted to elevate [his legs] while sitting at work." *Latasha W. v. Kijakazi*, 2022 WL 2305256, at *2 (D. Md. June 27, 2022) (reversing where the claimant had to elevate her legs while at rest and "the ALJ did not mention evidence related" to her medical condition). Based on the VE's testimony, if the ALJ made such a finding, it would have been relevant to the issue of disability. Thus, the ALJ "ignored evidence . . . that would support a finding of disability while highlighting evidence favorable to the finding of nondisability," which is error. *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007).

The Commissioner contends it was not necessary for the ALJ to discuss the evidence of edema or the recommendations by medical providers that Plaintiff elevate his legs because the medical record contradicts Plaintiff's claims. (Doc. 21, at 4-5). But it is the ALJ who must determine whether the claimant's "statements about the intensity,

13

persistence, and limiting effects of symptoms are consistent with the objective medical evidence and the other evidence of record." Social Security Ruling ("SSR") 16-3p: <u>Titles II & XVI: Evaluation of Symptoms in Disability Claims</u>, 2017 WL 5180304, at *7 (S.S.A. Oct. 25, 2017). The ALJ made no such findings regarding Plaintiff's claim of symptoms regarding limiting effects of his edema, and the Commissioner's argument to the contrary amounts to an impermissible request for the Court to reweigh the evidence. *See Vigil*, 805 F.3d at 1201. The Court does not make a determination as to whether Plaintiff's alleged restrictions are consistent with the record – that is an issue for the ALJ to address on remand.

On remand, the ALJ should discuss evidence of Plaintiff's edema and consider whether Plaintiff's alleged symptoms are supported by the record.

## VI.  Conclusion

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned **REVERSES** the decision of the Commissioner and **REMANDS** the matter for further proceedings consistent with this Memorandum Opinion and Order.

**SO ORDERED** this 24th day of January, 2023.

AMANDA MAXFIELD GREEN
UNITED STATES MAGISTRATE JUDGE